CHRISTIAN H. BUHL AND THEODORE D. BUHL v. T. GUILFORD SMITH.

*Principal and agent—Authority of attorney in fact to execute promissory note.*

In this case it is held that the *sole* question involved is whether there was any evidence to go to the jury upon the question of the authority of defendant's attorney in fact to sign the note in suit, and, after reviewing the testimony (see opinion), the Court find that there *was* such evidence, and affirm the judgment in favor of the plaintiffs.

Error to Newaygo. (Fuller, J.) Argued April 3; 1888. Decided April 20, 1888.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Blair, Kingsley & Kleinhans,* for appellant.

*D. F. Glidden,* for plaintiffs.

LONG, J. This is an action of *assumpsit,* brought by the plaintiffs against the defendant, a resident of the city of Buffalo, New York, upon a promissory note made March 23, 1885, to S. S. Wilcox, for $1,500, signed, " T. Guilford Smith, by Stewart Ives, Attorney."

Prior to the maturity of this note, it was indorsed by the payee to Buhl, Sons & Co., of the city of Detroit, plaintiffs in this suit, who are hardware dealers, and who placed the same to the credit of Wilcox upon their books.

The suit was commenced by attachment, and a quantity of lumber situated at Hungerford, in Newaygo county, was seized under the writ. Defendant appeared in the case, and, under the plea of the general issue, filed an affidavit stating—

"That he did not sign or execute the written instrument upon which this action is brought; and that he did not authorize or empower any other person to sign the same, or execute the same in his name or behalf; and that Stewart Ives, by whom said instrument purports to have been signed and executed in the name and on the behalf of this defendant, was never authorized by this deponent to sign or execute said instrument in the name or on behalf of this defendant; and that the same was executed by said Ives in the name of this deponent without any authority so to do."

The case came on for trial in the circuit court for Newaygo county, before a jury, who returned a verdict in favor of plaintiffs for the sum of $1,668.68, being the amount of said note and interest.

Defendant brings the case into this Court by writ of error.

The plaintiffs' claim was, and evidence was given on the trial tending to show the facts, that prior to the year 1876 a corporation known as the "Ives Lumber Company" was doing a lumber business in Newaygo and adjoining counties, and which corporation was composed principally of the heirs of C. P. Ives, the father of Stewart Ives. The wife of the defendant, T. Guilford Smith, was one of the Ives heirs, and the defendant himself held and owned some of the stock of this corporation. Stewart Ives was the manager.

In the year 1876, this corporation failed, and the defendant became the owner, nominally, of all the lands, mills, and other property formerly held by the Ives family and the corporation. During all these years Stewart Ives was the manager of the business, and continued to manage the affairs and business after it had passed into the hands of the defendant. Defendant, Smith, lived in the city of Buffalo, New York, and permitted Ives to manage the business in all its details, and personally the defendant gave it no attention.

At the time the Ives Lumber Company ceased doing business, it was largely indebted, and many of these debts were afterwards paid by Ives by paper drawn in the name of the defendant, signed by Ives as attorney.

Wilcox, the payee in the note, lived at Big Rapids, and carried on a mercantile business there, and was familiar with many of the business arrangements of the Ives Lumber Company, and the management of the defendant's business by Ives.

W. A. D. Rose was also acting for defendant in the conduct of his business affairs at Hungerford, and for the three years and a half prior to September 1, 1885, was superintendent. Stewart Ives was acting as attorney.

During that period over half a million of dollars in paper was issued in the business, signed by defendant, by Stewart Ives, attorney. This paper was carried on the books of the concern, and paid out of the Hungerford business. The old debts of the Ives Lumber Company were charged upon the books of defendant to Stewart Ives. Several notes were given to S. S. Wilcox, the payee in the note in suit, signed, T. "Guilford Smith, by Stewart Ives, Attorney." There was one of $1,000, and three of $500 each, which were paid, in addition to the note in suit. These were all entered on the books of the defendant as bills payable.

These notes were given for supplies furnished in defendant's business there, except the one in suit, which was given for an indebtedness of the Ives Lumber Company to Wilcox. Ives' personal account, as it appeared on the books, amounted to from thirty to sixty thousand dollars.

Ives signed notes in the name of defendant for matters outside of the Hungerford business, and at times directed Rose, the superintendent, to make such notes. These notes were subsequently paid out of the business.

Quite a large amount of this old indebtedness of the Ives Lumber Company was paid by notes of defendant, issued by

Ives as attorney, and these notes subsequently paid. Something over $10,000 of such old indebtedness was paid to Joseph Martin, of Grand Rapids, $500 paid to one Vanderslius, $1,000 to $1,500 paid to Mr. Barbour, and $200 to Bailey. There were quite a number of other payments made of this old indebtedness in this way, aggregating from $25,-000 to $30,000, and all appearing upon the books of defendant; and Ives had full charge and control of all the affairs and business there.

Sometime during this year, 1885, but at what particular time in the year the record does not disclose, the defendant visited Hungerford, and examined the books, and had his attention called by the book-keeper to Ives' personal account, and the state of the affairs of the concern.

The defendant was then told by the book-keeper that all Ives' vouchers, and all notes he should give for those matters, should be put into Ives' personal account, and that all checks he should draw, and notes given by him, would go into that account, and, if there had been any accounts or bills of the late Ives Lumber Company paid, they would probably be in that account.

Ives' account at that time amounted to between thirty and sixty thousand dollars, and contained items of account of the Ives Lumber Company paid by him.

No testimony is given or offered to show that the defendant at that time, or at any other time, made any objection to the manner in which Ives was conducting the business, or made any objection to the paying of notes in this way, or to the payment of the old indebtedness of the Ives Lumber Company. Some evidence was given tending to show that some of the Wilcox notes were at that time charged on the books examined by defendant.

The deposition of George H. Taylor was taken in the case, and read on the trial, in which the witness says:

"I reside in Chicago, Illinois, and know defendant, T. Guilford Smith, and knew Stewart Ives in his life-time. I had business with both of them in 1885; in June or July. I had sold Ives a piece of property, and he made certain representations to me in regard to his ownership of property in Michigan. At his suggestion, I think, Mr. Smith came here from Buffalo to corroborate his statements. He stated he had a large amount of valuable lumber land in Michigan, the title of which was in Smith as trustee; that Mr. Smith's wife and others had a small interest in it, but that it was about to be released to him; that he was the sole owner.

"I questioned Mr. Smith as to the truth of Mr. Ives' statement, and he told me what Mr. Ives said was true; that he was the equitable owner of the property; that his wife and one of Ives' sisters, I believe, had a small interest in it; but that, on account of his having supported his sister for a number of years, she would waive all right, and that his wife would do the same, and take Ives' obligations for it. * * * During these negotiations, Mr. Ives gave me two notes, signed, 'T. Guilford Smith, by Stewart Ives, Attorney,' to take the place of notes of similar amounts which had been given me and which were secured by trust deed.

"I had a conversation with Mr. Smith at that time relative to Mr. Ives' authority to use that name. He told me that notes signed by Ives, attorney, were good. * * * At Buffalo, I had another conversation with him regarding his liability upon paper made by Ives, signed, 'Stewart Ives, Attorney.' This was in the month of July, after Ives was taken crazy, or was shut up. Mr. Smith said at that time that he supposed that any papers signed by Ives, attorney, would have to be paid. He made, I think, some reservation, in regard to it like this: That there was a question as to whether those notes were good if they were signed by Ives when he was *non compos.* As I recollect it, that was the only reservation he made."

The depositions of William P. Conger and Edward F. Gorton were also taken, and read on the trial, from which it appears that they were acting as attorneys of George H. Taylor, and had consultations with the defendant and Stewart Ives, in Chicago, at the time testified to by the witness Taylor, and during which defendant stated that, some years prior to that, Mr. Ives had got into financial difficulty, and that

there had been a good deal of litigation, and all the property had been put into the name of defendant; that he (defendant) lived at Buffalo, and, having an entirely different business, had nothing to do with the management of that property or the transaction of the business; but that it really belonged to the Ives estate, and that for a long time he had paid no attention to it, and left Ives to run it about as he pleased.

There was no testimony offered on the part of the defend-ant except that tending to show that Stewart Ives was *non compos* at the time of the execution of the note in suit. We need not discuss this question, however, as, under the charge of the court, the jury found that fact against the defendant.

Defendant's counsel, in their brief filed in this Court, devote much space to the discussion of the question whether the plaintiffs stand in the position of *bona fide* holders of this paper. The court charged the jury:

"There is another phase of this case, and that is whether the plaintiffs, Buhl & Sons, are *bona fide* purchasers; that is, whether they bought this paper in the due course of business, and paid value for it, and are protected as *bona fide* purchasers. There is no testimony in the case showing, or tending to show, that Buhl & Sons made any inquiries whatever, or made any attempt to ascertain whether this paper was properly executed or not,—whether Ives had authority to execute it or not; and the court is of the opinion that the plaintiffs stand in no better position than would Mr. Wilcox if he was plaintiff in this suit."

We do not see how this question can now enter into this case under such a charge. The whole case was submitted to the jury upon the theory that unless, under the facts stated, S. S. Wilcox, the payee, could have recovered upon the note in suit, then the plaintiffs must fail in this action.

As we view the case, the only question involved is, was there any evidence in the case to go to the jury upon the question of the authority of Stewart Ives to issue the note in suit?

There are several errors assigned upon the general charge of the court, and refusal of the court to give certain of defendant's requests in his charge to the jury, as well as the giving by the court of some of plaintiffs' requests; but the assignments are not noticed in briefs of defendant's counsel, and no oral argument was made upon them. We need not notice them, as we find no error, and are of opinion that the general charge was in all respects a clear, full, and fair statement of the law of the case.

It needs no citation of authority to show that, under the circumstances stated here, there was evidence of authority of Stewart Ives to sign such notes. He was given by defendant the full control and management of the business for years, and, in fact, the circumstances testified to by witnesses Taylor, Gorton, and Conger tend strongly to show that the whole business belonged to Stewart Ives himself, and that defendant, T. Guilford Smith, was the owner in name only of this large amount of property, and that it was carried in his name to put off the collection of claims of the Ives Lumber Company. At least, it is apparent that the defendant took the title to, and claimed to own and control, all the property and effects of the Ives Lumber Company and the Ives heirs. It was placed in his keeping soon after the Ives Lumber Company ceased to do business; and after its coming into his hands it was conducted in the same manner, and by the same person, as before. No change is made in its management.

The defendant, living in Buffalo, New York, leaves a business aggregating some two or three hundred thousand dollars annually to the entire and sole management of Ives; and upon his coming here, and looking over the books, finds this agent has issued notes to the amount of from twenty-five to thirty thousand dollars in his name, and makes no objection or comment. This is strong proof of Ives' authority; and when coupled with the defendant's statement, made to Taylor in Chicago, that Ives had authority to issue such

notes, and which is entirely uncontradicted, we think it was evidence, under proper instruction from the court, upon which a jury might find the authority to issue the note in suit.   This must dispose of the case.

The judgment is affirmed, with costs.

SHERWOOD, C. J., and CHAMPLIN, J., concurred.  MORSE, J., did not sit.